

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-6-1994

# Edwards v. United States

Precedential or Non-Precedential:

Docket 94-3240

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"Edwards v. United States" (1994). *1994 Decisions.* Paper 209.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/209

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 94-3240


RODERICK EDWARDS,
Appellant

V.

UNITED STATES OF AMERICA


ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. Civil No. 93-00199J)


Argued September 26, 1994

Opinion filed:  December 6, 1994

Before:  SCIRICA, NYGAARD AND McKEE, Circuit Judges

MARJORIE M. SMITH, ESQUIRE (Argued)
Federal Defender Services
The Legal Aid Society
52 Duane Street
10th Floor, Appeals Unit
New York, NY 10007
Attorney for Appellant

FREDERICK W. THIEMAN, ESQUIRE
United States Attorney
BONNIE R. SCHLUETER, ESQUIRE (Argued)
Assistant United States Attorney
Office of United States Attorney
633 United States Post Office & Courthouse
Pittsburgh, PA 15219
Attorneys for Appellee

NYGAARD, <u>Circuit Judge</u>

Roderick Edwards appeals the district court's order denying his petition for habeas corpus relief. Edwards contends that the Bureau of Prisons improperly denied him sentence credit for the time he spent in home confinement on bond pending appeal. The district court denied his petition. The sole issue on appeal is whether his home confinement rises to the penal valence of "official detention" within the meaning of 18 U.S.C. § 3585(b), thus entitling him to credit against his sentence. We conclude that it does not and will affirm.

I.

Edwards pleaded guilty to distribution and possession with intent to distribute cocaine base. The court then placed Edwards on pre-trial home detention pursuant to 18 U.S.C. § 3142(c) to ensure his appearance at trial and to protect the public. For a period of nine to ten months, Edwards was confined to his uncle's home under electronic monitoring and could not leave without permission of Pretrial Services. He was granted a number of "black out periods" to leave his uncle's apartment and attend church, church choir practice, attorney and court appointments.

Edwards was sentenced to 120 months of imprisonment, followed by five years supervised release. At sentencing, Edwards requested sentence credit for the nine to ten months he spent in home confinement, which the district court denied.

The Court of Appeals for the Second Circuit affirmed and held that sentencing courts have the authority to determine

whether a form of confinement amounts to "official detention" and whether sentence credit should be granted under § 3585(b). United States v. Edwards, 960 F.2d 278 (2d Cir. 1992). Shortly thereafter, the Supreme Court, in United States v. Wilson, 112 S.Ct 1351 (1992), held that § 3585(b) does not authorize a district court to award credit at sentencing and that the Attorney General, through the Bureau of Prisons, is to make the sentence credit determination for a defendant. Id. at 1354–1355.

In light of Wilson, Edwards filed a petition with the Bureau of Prisons, again raising the issue. The Bureau denied Edwards' petition for "prior custody credit." Having exhausted his administrative remedies, Edwards, now incarcerated at a federal corrections facility in Loretto, Pennsylvania, filed a petition for habeas corpus relief, raising the same denial of sentence credit issue.

The district court referred the case to a magistrate judge, who recommended that the district court find the restrictions on Edwards' freedom were not equal to official detention. The district court rejected Edwards' objections, and adopted the magistrate judge's report and recommendation, except a portion of the report recommending that "residential confinement ... never [be considered] legally onerous enough to constitute official detention." Specifically, the district court's order stated that Edwards had "not been restrained to so significant a degree that it would constitute 'official detention' under the statute."

Edwards again argues that the time he spent in home confinement constitutes "official detention" as that term is used in 18 U.S.C. § 3585(b), which provides in pertinent part:

**Credit for prior custody** – A

defendant shall be given credit
toward the service of a term of
imprisonment for any time he has
spent in official detention prior
to the date the sentence commences
(1) as a result of the offense for
which the sentence was imposed. . .

The government does not dispute Edwards concerning the conditions of his home detention, but argues that the decision of the Bureau of Prisons, which found that Edwards' court-ordered, pre-trial residential segregation did not amount to "official detention," was reasonable under the statute and entitled to substantial deference.

Ordinarily, agency decisions are subject to limited review and can be overturned only if they are arbitrary, capricious or an abuse of discretion, especially when Congress has given the agency the authority to carry out a statute's purpose. National Small Shipments Traffic Conference, Inc. v. United States, 887 F.2d 443, 446 (3d Cir. 1989), cert. denied, 495 U.S. 918 (1990). Moreover, an agency's interpretation of a statute that it is responsible for administering is entitled to substantial deference. Chevron U.S.A. v. National Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778 (1984). Here, as the Supreme Court noted in United States v. Wilson, 112 S.Ct. 1351 (1992), the Attorney General, through the Bureau of

Prisons, has long been trusted with the authority to calculate sentence credit for time previously served. Id. at 1355. Nevertheless, because the Bureau of Prisons' assessment of Edwards' home confinement was based on its "Program Statements[1]", mere internal guidelines rather than its published regulations, its interpretation is entitled to a minimal degree of deference. See Koray v. Sizer, 21 F.3d 558, 562 (3d Cir. 1994) (citing FLRA v. United States Dep't of Navy, 966 F.2d 747, 762 & n. 14 (3d Cir. 1992)(in banc)).

In Koray v. Sizer, 21 F.3d 558 (3d Cir. 1994), we held that the time a detainee spends in a halfway house pursuant to court order may be "official detention" if the restrictions on a detainee's liberty were equivalent to "jail-type" confinement. Edwards asserts that his home confinement was so restrictive that it approached jail-type confinement, and that the Bureau of Prisons abused its discretion in finding that his confinement was not "official detention" under § 3585(b).

Edwards simply cannot carry his burden: the terms of his home confinement were just not sufficiently onerous to

---

[1]. Before the Supreme Court decided Wilson, the Bureau of Prisons issued a policy statement on February 21, 1992 that made reference to sentence credit. The Bureau of Prisons Sentence Computation Manual CCCA Program Statement 5880.28 (February 21, 1992) provides that, "[a] condition of bail or bond which is 'highly restrictive', and that includes 'house arrest', 'electronic monitoring' or 'home confinement' . . . is not considered as time in official detention."

However, "[t]he Bureau's interpretation is recorded in its 'Program Statements', which are merely internal agency guidelines and may be altered by the Bureau at will." Koray, 21 F.3d at 562 (citing Bureau of Prisons, Program Statement 1121.02.1.2.1. (April 12, 1993)).

approach jail-type incarceration, and, therefore, did not constitute official detention within the meaning of § 3585. Edwards minimizes the frequent "blackout" periods he was given where he was allowed to leave his uncle's apartment to attend church and social events. Although he was on electronically monitored release and could not leave his uncle's apartment without permission from Pretrial Services, Edwards was frequently allowed to leave the apartment. There is no evidence that there were any restrictions placed on the number of guests he could have at his uncle's home. There is no evidence that limitations were put on the frequency of his guests' visits. Finally, Edwards argues that he was not allowed to work while he was in home confinement, but no evidence was presented that Edwards had a job or had to refuse employment because of the confinement.

During the first five months of home confinement, Edwards was given permission to attend twenty-two social functions, and one personal outing. Further, from November 22, 1990 to April 11, 1991, Edwards was given permanent blackout periods every Monday, Wednesday and Friday from 5:00 p.m. to 10:00 p.m. for choir rehearsal, every Saturday from 11:00 a.m. to 4:00 p.m. for choir meetings, and every Sunday from 9:00 a.m. to 7:00 p.m. for church service and evening service. Moreover, during the last four months of his release, Edwards was permitted approximately thirty hours per week outside of his home confinement for church activities. Finally, his weekend blackout periods were extended on three occasions.

Edwards may argue and indeed prove that his home confinement deterred him and taught him a lesson, contained him and protected society, and even totally rehabilitated him. That, however, is beside the point. By Congress' scheme, it simply does not matter that the condition of Edwards' home confinement may have accomplished all this. The penologically uncertain, but nonetheless patent objective of offense-based sentencing under the Sentencing Reform Act is retributive and punitive. Congress has determined that the sinner must suffer. Edwards was placed on court-ordered, pretrial detention to ensure his appearance at trial, and the fairly modest nature of the restrictions placed on him reflects that purpose. His home confinement was not sufficiently jail-like to punish and he gets no credit.

## II.

Edwards next argues that the Bureau of Prisons should have given him sentence credit because similarly situated sentenced persons confined under the same conditions receive sentence credit. This is not true. Edwards, convicted of distributing cocaine base in violation of 21 U.S.C. § 841(a), could not even be sentenced to home detention. Section 5C1.1(f) explicitly states that if a defendant's "guideline range is more than ten months, the guidelines require that the minimum term be satisfied by a sentence of imprisonment." U.S.S.G. § 5C1.1(f) (1990).

Edwards' guideline range for violating § 841(a) is well above ten months. He pleaded guilty to distributing fifty grams

or more of cocaine base, which carries a base level offense of sixteen under the Sentencing Guidelines. U.S.S.G. § 2D1.1 (1990). At a minimum, this would result in a twenty-one month sentence, and here when his criminal history and other charges were taken into account, Edwards received a 120-month sentence. Edwards bears no similarity to others sentenced to home confinement, because he simply could not have been given such a sentence.

### III.

In sum, we will affirm the district court's denial of Edwards' petition for habeas relief. The district court gave appropriate deference to the Bureau's conclusion, made the unassailable factual determination that Edwards' home confinement with electronic monitoring was not sufficiently restrictive to meet the Koray test, and properly concluded that his home confinement was not "official detention" under § 3585(b). We will affirm.